UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD HARTNETT AND AINE DEMPSEY,<br><br>                       Plaintiffs,<br><br>    v.<br><br>LIBERTY INSURANCE CORPORATION, JOHN AND JANE DOE 1-10, ABC CORP. 1-10,<br><br>                       Defendants.[1] | No. 24-CV-50 (KMK)<br><br>OPINION AND ORDER |

Appearances:

David B. Friedrich, Esq.
David B. Friedrich & Associates, P.A.
Ridgewood, NJ
*Counsel for Plaintiffs*

William H. Trizano, Esq.
Marshall Todd Potashner, Esq.
Jaffe & Asher LLP
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

       Richard Hartnett and Aine Dempsey, (collectively "Plaintiffs") bring this Action against Liberty Insurance Company ("Liberty"), John and Jane Doe 1–10, and ABC Corp. 1–10, (collectively, "Defendants"), alleging various claims in connection with a homeowner's

---

[1] The Clerk of Court is respectfully requested to amend the case caption as it is stated in this Order.

insurance policy. (*See generally* Am. Compl. ("AC") (Dkt. No. 1-2).)[2] Before the Court is Defendant Liberty's Motion to Dismiss (the "Motion") certain claims in Plaintiffs' Amended Complaint ("AC"). (*See* Not. of Mot. (Dkt. No. 8).) For the following reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

Plaintiffs are husband and wife, who, on or about December 12, 2022, purchased a primary residence at 365 Saint Johns Avenue, Yonkers, Westchester County, New York ("Premises"). (AC ¶ 1.) This property was purchased with the intent to be their permanent residence. (*Id.* at ¶ 3.) Upon closing on the Premises, the Plaintiffs obtained a mortgage and in accordance with the requirements of the mortgagor, a policy of insurance had to be obtained insuring the house for at least the amount of the loan obtained to purchase the property. (*Id.*) Plaintiffs communicated with an insurance broker who, upon information and belief, was an agent for Liberty, authorized to grant insurance policies on behalf of Liberty. (*Id.* at ¶ 4.) Plaintiffs allege that the information that was requested by the agent was submitted, and that, thereafter, an offer to issue an insurance policy covering the Premises was received and accepted. (*Id.*) Liberty issued a homeowners' policy, which would pay the sum of $1,829.00 as for a twelve-month period by LibertyGuard Deluxe Homeowners Policy, Policy Number H37-221-

---

[2] On August 8, 2024, Defendant Liberty Mutual Holding Company, Inc. filed a proposed stipulation, which stated that Liberty Insurance Corporation is the proper Defendant in this Action. (*See* Dkt. No. 23.) Accordingly, the Parties requested that any reference to Liberty Mutual Holding Company in their papers should be substituted with Liberty Insurance Corporation. (*See id.*) Further, Defendant's pending Motion to Dismiss shall be decided by the Court as if it were made on behalf of Liberty Insurance Corporation. (*See id.*) Finally, the arguments made by Defendant in its Motion, asserting that Plaintiffs have named the wrong defendant are withdrawn. (*See id.*) The Court so ordered the stipulation. (*See* Dkt. No. 24.)

828671-40 2 4 for a policy period of December 2, 2022 through December 2, 2023 (the "Policy'). (*Id.*)

When consulting with the insurance broker and upon the initial call with the broker, Plaintiffs explained that the Premises was a "fixer-upper" and that the Premises would be immediately renovated after closing so that the insurance carrier would be on notice of this fact. (*Id.* at ¶ 5.) However, at all times Plaintiffs would still reside on the Premises, in the area of the home that was not being renovated. (*Id.*) The Policy was paid and submitted to the finance source, resulting in a closing on the property and the property being titled in the Plaintiffs' name. (*Id.* at ¶ 6.) The Plaintiffs alleged, upon information and belief, that Liberty, through its agent, inspected the Premises in furtherance of the issuance of the Policy. (*Id.* at ¶ 7.) After the closing, the Plaintiffs moved into the Premises with their two children, giving up their prior residence, which they had rented. (*Id.* at ¶ 8.) Plaintiffs commenced furnishing the Premises, residing in the upper levels of the residence. (*Id.* at ¶ 9.) Plaintiffs contend that the insurance agent was aware that Plaintiffs intended to remodel the main living areas. (*Id.*) Plaintiffs commenced the process of deciding how the renovation of the residence would be completed by retaining construction professionals. (*Id.* at ¶ 10.) Plaintiffs lived in and maintained the Premises, which included maintaining the Premises with proper heating and utilities. (*Id.* at ¶ 11.)

On or about February 5, 2023, a water pipe burst in the residence, causing substantial damage to the property. (*Id.* at ¶ 12.) Plaintiffs reported the claim to Liberty as soon as practicable but within twenty-four hours of the incident. (*Id.* at ¶ 13.) Plaintiffs did what was necessary and prudent to protect their home from further damage but were never authorized to

begin any repairs. (*Id.*) It was not until October 2023, approximately eight months after the incident, that Defendant rejected the claim. (*Id.*)

Liberty's agent, Timothy Fitzgerald inspected the water damage to the residence on or about February 8, 2023. (*Id.* at ¶ 14.) During the inspection, he walked the entire building and directed Plaintiffs not to do any additional work in safeguarding the residence until coverage was awarded. (*Id.*) Due to the length of time it took to make a finding of coverage, the condition of the premises grew worse. (*Id.*) Liberty retained the services of a moisture mitigator contractor. (*Id.* at ¶ 15.) However, the contractor selected by Liberty was not licensed or permitted to do any work in Yonkers and could not pull a permit, and therefore, could not do any work on the Premises. (*Id.*) An employee at Liberty determined that Plaintiffs could not reside in the residence, and as a result, an alternative accommodation was approved for three days. (*Id.* at ¶ 16.) The authorized accommodations were insufficient for two adults and two children, so Plaintiffs resided with family. (*Id.*)

Plaintiffs assert that Liberty failed to provide information of specific contractors that Plaintiffs could use. (*Id.* at ¶ 17.) Accordingly, Plaintiffs requested a plumber and electrician to prepare estimates and other information to submit to Liberty, as it had requested. (*Id.*) Moreover, with the intent to mitigate additional damage to the property, Plaintiffs requested and received from the Yonkers Building Department on February 17, 2023, a permit to mitigate water damage. (*Id.* at ¶ 18.) A report was submitted, indicating that the moisture readings in the Premises was 100%. (*Id.*) Plaintiffs allege that the failure to properly mitigate caused additional damage to the Premises. (*Id.*)

On or about March 7, 2023, Plaintiffs submitted estimates obtained from other contractors, concerning the work necessary to mitigate the water damage, as requested by

4

Liberty. (*Id.* at ¶ 19.) Because the damage costs and expenses exceeded $100,000.00, Liberty assigned a second adjuster, Michael Sarris. (*Id.* at ¶ 20.) On March 13, 2023, a Liberty representative walked the property again, with its contractor, who drafted an estimate for the repairs that required completion. (*Id.*) However, Sarris directed that no work be completed, as Liberty would not be responsible for the costs and expenses of work that was not authorized and approved. (*Id.*)

Thereafter, Plaintiffs received communications, on or about March 14, 2023, from Holly Evans, who notified them that she was the new adjuster assigned to this matter. (*Id.* at ¶ 21.) Evans stated that she did not understand why Plaintiffs did not submit a claim for personal property. (*Id.*) Plaintiffs offered to Evans any and all information required to further review the claim, to which they did not receive a response. (*Id.*) Plaintiffs followed up, requesting a status update and a copy of the adjuster's estimate, which also went ignored. (*Id.* at ¶ 22.)

On or about March 22, 2023, Con Edison contacted Plaintiffs, inquiring whether Plaintiffs authorized Con Edison to release Plaintiffs' billing information. (*Id.* at ¶ 23.) Plaintiffs later learned that Liberty representative Evans, without Plaintiffs' consent or authorization, directly contacted Con Edison. Plaintiffs claim that, upon information and belief, Evans misrepresented herself as the owner of the Premises to Con Edison to gain access to Plaintiffs' records. (*Id.*) Con Edison confirmed that the email address they were to send records to was Evan's email. (*Id.*) Thereafter, Plaintiffs communicated with Liberty agent Joe Scambia to determine whether his office contacted Con Edison. (*Id.* at ¶ 24.) Plaintiffs seem to allege that Scambia responded to Plaintiffs, expressing to them that Liberty contacted Con Edison without Plaintiff's consent. (*Id.*)

Plaintiffs allege that they requested Liberty a number of times to authorize the work that needed to be commenced on the residence because the delays were causing further damage to the Premises. (*Id.* at ¶ 25.) However, Liberty never responded. (*Id.*) On or about March 27, 2023, another Liberty representative, Jeffrey Kaffman, contacted Plaintiffs. (*Id.* at ¶ 26.) Plaintiffs requested that Kaffman send them in writing precisely the information he needed and any other steps he wanted Plaintiffs to take. (*Id.*) Kaffman requested that Plaintiffs each give a verbal statement outside of the other's presence. (*Id.*) Plaintiffs cooperated with this request. (*Id.*)

Plaintiffs contend that, even though it is not specifically set forth in communications, Liberty wrongfully denied Plaintiffs coverage based on the fact that Plaintiffs made material misrepresentations as to their occupation of the Premises. (*Id.* at ¶ 27.) However, Plaintiffs aver that such a statement, regarding their representations as to their occupation of the Premises, is false. (*Id.*) To the contrary, Plaintiffs did occupy the Premises as evidenced by photographs and Liberty's agents' walk-through of the Premises, both of which showed that the Premises contained all of Plaintiffs' personal property to be used at the residence. (*Id.*)

Plaintiffs requested that Liberty's full file on Plaintiffs' claim be produced. (*Id.* at ¶ 28.) To date, Plaintiff's requested information, including a copy of all statements, copies of document requests, estimates and reports from Liberty's investigators, and other reasonable information, has not been provided to Plaintiffs. (*Id.*) Plaintiffs have and continue to comply with all reasonable requests for information relative to the loss. (*Id.* at ¶ 29.) Moreover, Plaintiffs claim that they have complied fully and completely with the Policy issued, but to date, Liberty has and continues to refuse to comply with the terms and conditions of the Policy. (*Id.* at ¶ 30.) Liberty in accordance with the Policy had an obligation to expeditiously take reasonable and necessary steps to safeguard the property, to supply reasonable alternate accommodations suitable for two

6

adults with two children, to submit all reasonable and necessary information as requested, and to authorize and permit mitigation and repairs to the property be insured. (*Id.* at ¶ 31.) In addition, pursuant to the Policy, Liberty was supposed to pay Plaintiffs all reasonable and necessary costs and expenses regarding repair of the damages that resulted from the water damage that occurred on February 5, 2023. (*Id.*)

Plaintiffs alleged that the property damage and notice of the damage to Liberty occurred on or about December 12, 2022. It took over eight months for Liberty to conduct its investigation, preventing Plaintiffs from making any repairs to the Premises due to the risk of being denied their claim outright, which occurred anyway. (*Id.* at ¶ 34.) As a result, Plaintiffs have suffered irreparable and permanent harm. (*Id.* at ¶¶ 34–35.)

B. Procedural History

On December 1, 2023, Plaintiffs commenced the instant Action by filing their Complaint in the Supreme Court of the State of New York County of Westchester. (*See* Dkt. No. 1.) The Action was removed to this Court on January 4, 2024. (*See id.*) Defendant filed a pre-motion letter regarding a motion to dismiss Plaintiffs' AC on January 11, 2024, (*see* Dkt. No. 4–5), to which Plaintiffs did not respond, (*see* Dkt.). On January 26, 2024, the Court set a briefing schedule for Defendant's Motion. (*See* Dkt. No. 6.) Defendant filed the instant Motion to Dismiss on February 26, 2024. (*See* Not. of Mot.; Decl. of Marshall T. Potashner in Supp. of Mot. to Dismiss ("Potashner Decl.") (Dkt. No. 9); Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mem.") (Dkt. No. 10).) Plaintiffs filed their Response on March 27, 2024. (*See* Pls.' Mem. of Law in Opp. to Mot. to Dismiss ("Pls.' Opp.") (Dkt. No. 12).) Defendant filed its Reply on April 11, 2024. (*See* Def.'s Reply Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Reply Mem.") (Dkt. No. 14).)

II. Discussion

A. Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at

678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

### B. Analysis

Defendant seeks to dismiss some of Plaintiffs' claims, including claims regarding breach of fiduciary duty; quality of life; New York Insurance Law § 2601 and 11 CRR-NY 216.0; New York General Business Law ("GBL") § 349; punitive damages, and attorneys' fees. (*See* Def.'s Mem.) The Court addresses these claims in turn.

#### 1. Fiduciary Duty

The Court begins with Plaintiffs' breach of fiduciary duty claim. (*See* AC ¶¶ 49–52.) "Under New York law, 'the elements of a claim for breach of a fiduciary obligation are: (i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom.'" *2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*, 96 F.

Supp. 3d 182, 231 (S.D.N.Y. 2015) (alteration adopted) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011)). "It is well established that insurance companies normally do not owe a fiduciary duty to their insureds, absent 'some special relationship.'" *Murphy v. Commonwealth Land Title Ins. Co.*, 621 F. Supp. 3d 373, 379 (E.D.N.Y. 2022) (quoting *Edelman v. O'Toole-Ewald Art Assocs., Inc.*, 28 A.D.3d 250, 251 (N.Y. App. Div. 2006)). "Insureds bear the burden of proving a special relationship." *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 420 F. Supp. 3d 123, 136 (S.D.N.Y. 2019).

Here, Plaintiffs have failed to allege any facts establishing a special relationship. Indeed, they do not plead any facts that would allow this Court to conclude that the association between the insurer and the insured in this case was out of the ordinary. (*See generally* AC.) Instead, Plaintiffs merely assert that there were various communications between Plaintiffs and Defendant's agent Joe Scambia, who was aware that Plaintiffs were attempting to "insure . . . [their] residence and protect their forever home." (Pls.' Opp. 14.) However, the insurer's awareness that the insured is trying to purchase insurance does not establish the kind of special relationship that gives rise to a fiduciary duty. *See Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 405 (S.D.N.Y. 2018) (concluding that an alleged conversation in which the parties discussed the most advantageous type of insurance policy is insufficient to create a special relationship between the insurer and insured); *Long Beach Rd. Holdings, LLC v. Foremost Ins. Co.*, 75 F. Supp. 3d 575, 590 (E.D.N.Y. 2015) ("Other than a conclusory allegation that the [p]laintiff had a 'long term relationship' with [insurer], there are no allegations that suggest that the [p]laintiff enjoyed anything other than an ordinary consumer-agent insurance relationship with [insurer]."); *Murphy v. Kuhn*, 682 N.E.2d 972, 975 (N.Y. 1997) (holding that no special relationship existed where the plaintiff "never asked [the defendant] to

increase the liability limits" on the insurance policy at issue and, "[i]n fact, there is no indication that [the plaintiff] ever inquired or discussed with [the defendant] any issues involving the liability limits" of the policy); *cf. Voss v. Netherlands Ins. Co.*, 8 N.E.3d 823, 829 (N.Y. 2014) (holding that a special relationship might exist, and thus granting insurer summary judgment was inappropriate, because the two parties "discussed business interruption insurance from the inception of their business relationship," the defendant obtained "relevant data in order to calculate the proper level of coverage," and the plaintiff "questioned that amount [coverage]" and the defendant "assured her that it was adequate based on his review of her business finances"). Plaintiffs do not cite any case law to support the finding of a special relationship in the circumstances alleged in this case. (*See* Pls.' Opp.) Accordingly, the Court concludes that Plaintiffs fail to plead a special relationship between them and Defendant, and therefore, Plaintiffs' fiduciary duty claim is dismissed.

### 2. Quality of Life Damages

Plaintiffs next allege a claim for "quality of life damages." (*See* AC ¶¶ 53–56.) As an initial matter, the Court is unaware of any such claim under New York Law and Plaintiffs fail to provide any legal support to advance such a claim. (*See* Pls.' Opp. 15–18.) In any event, the Court notes that this claim is duplicative of Plaintiffs' breach of contract of claim. (*See* AC ¶¶ 40–43; 53–56). Further, it is well settled that "a plaintiff cannot recover for emotional distress caused by a breach of contract." *Delice v. Rhymes N. Dimes Brands*, No. 20-CV-9352, 2021 WL 1534223, at *2 (S.D.N.Y. Apr. 19, 2021) (internal quotation marks and citations omitted); *see also Wehringer v. Standard Sec. Life Ins. Co. of N.Y.*, 440 N.E.2d 1331, 1332 (N.Y. 1982)) ("[A]bsent a duty upon which liability can be based, there is no right of recovery for mental distress resulting from the breach of a contract-related duty."). As such, this claim is dismissed.

3. New York Insurance Law § 2601 and 11 CRR-NY 216.0

Plaintiffs also bring a claim under New York Insurance Law § 2602 and/or 11 CRR-NY 216.0. (*See* AC ¶¶ 55–57.) However, "New York Insurance Law § 2601 does not provide for a private right of action." *SJN Props. LLC v. Harleysville Ins. Co.*, --- F. Supp. 3d ---, 2024 WL 3104346, at *8 (S.D.N.Y. June 24, 2024) (citing N.Y. Ins. Law § 2601; *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 126 (2d Cir. 2017)). Nor do Plaintiffs have a private cause of action "for an alleged violation of part 216 of the Insurance Regulations." *De Marinis v. Tower Ins. Co. of New York*, 6 A.D.3d 484, 486 (N.Y. App. Div. 2004) (collecting cases). Plaintiff offers no contrary authority, so this claim is dismissed.

4. GBL § 349

Plaintiffs claim that Defendant violated "NY Ins. Law § 349." (*See* AC ¶¶ 58–62.) There is no such statutory provision. It is likely that Plaintiffs mean to rely on N.Y. Gen Bus. Law § 349. "Section 349 prohibits deceptive acts or practices in the conduct of any business, trade[,] or commerce . . . ." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (internal quotation marks and citation omitted). To successfully assert a claim, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. 2012)). The allegedly deceptive acts or representations must be misleading to "a reasonable consumer." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (N.Y. 2002). In the context of Section 349 claims, "deceptive acts are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." *Manrique v. State Farm Mut. Auto. Ins. Co.*, No.

21-CV-224, 2021 WL 5745717, at *7 (S.D.N.Y. Dec. 2, 2021) (alteration adopted) (internal quotation marks omitted) (quoting *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003)).

Here, Plaintiffs fail to adequately plead the required elements of a Section 349 claim. Specifically, Plaintiffs merely allege, in a conclusory fashion, that Defendant engaged in deceptive acts and practices toward Plaintiffs (and not consumers at large), without specifying what these acts and practices were. (*See* AC ¶ 58–62.) Nor do Plaintiffs identify the alleged fraudulent reasons that Defendant denied their insurance claim. (*See id.*)[3] Additionally, to the extent Plaintiffs claim that Defendant "improperly used Plaintiff's personal identifiers to request documents from Con Edison without obtaining Plaintiff[s'] prior authorization," Plaintiffs do not explain how such alleged conduct is related to the denial of their insurance claim, and therefore cause them injury or harm. (*See id.* at ¶ 61.) In essence, Plaintiffs claims are "naked assertions devoid of [any] factual enhancement." *Iqbal*, 556 U.S. at 678. As such, Plaintiffs have not stated "[f]actual allegations" that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, Plaintiffs Section 349 claim is dismissed without prejudice so Plaintiffs can provide further allegations that may allow the Court to properly evaluate this claim.[4]

---

[3] The Court notes that, in addition to a lack of adequate factual allegations, Plaintiffs' papers are devoid of a single legal citation in support of their Section 349 claim. (*See* Pls.' Opp. 19–22.)

[4] The Court highlights that Plaintiffs' contention that their Section 349 claim raises factual questions that should be left for the trier of fact, (*see* Pls.' Opp. 22), is simply wrong. Whether a plaintiff has pled the requisite elements of a claim is a legal question for a court to decide. *Moritz v. Town of Warwick*, No. 15-CV-5424, 2016 WL 3248494, at *3 (S.D.N.Y. June 9, 2016) (noting that, at the motion to dismiss stage, it is the function of the court "to assess whether [p]laintiff has plausibly pleaded the elements of the claim." (alterations adopted) (internal citations omitted)). At this stage, as a matter of law, Plaintiffs have not met the pleading threshold for a Section 349 claim. As such, there are no factual questions for a trier of fact to determine.

### 5. Punitive Damages

Plaintiffs also seek punitive damages. (*See* AC 11). "Under New York law, damages arising from the breach of a contract are 'ordinarily limited to the contract damages necessary to redress the private wrong,' but 'punitive damages may be recoverable if necessary to vindicate a public right.'" *Scottsdale Ins. Co. v. McGrath*, 549 F. Supp. 3d 334, 355 (S.D.N.Y. 2021) (quoting *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 315 (N.Y. 1995)); *see also Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613 (N.Y. 1994)).

> In order to plead entitlement to punitive damages for a breach of contract under New York law, a plaintiff's allegations must satisfy the following: '(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be egregious in nature; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally.'"

*Zicherman v. State Farm Fire & Cas. Co.*, 698 F. Supp. 3d 564, 573 (E.D.N.Y. 2023) (alterations adopted) (quoting *New York Univ.* 87 N.Y.2d at 316). With respect to the fourth factor, "[b]ecause punitive damages are only appropriate when the defendant is alleged to have harmed the public broadly, plaintiffs must show a pattern or practice of similar behavior." *Id.*

Here, Plaintiffs have not pled any of the elements to plausibly state a claim for punitive damages. There are no allegations in the AC that indicate that Defendant alleged actions towards Plaintiffs are part of pattern or practice directed at the public generally. (*See generally* AC.) Nor do Plaintiffs provide any argument in their Opposition to explain how Defendant's supposed conduct harmed the public. (*See* Pls.' Opp. 22–23.) As such, the Court concludes that Plaintiffs have failed to plead a threshold element of a punitive damages claim, and therefore, this claim is dismissed. *See Zicherman*, 698 F. Supp. 3d at 573 (dismissing punitive damages claim, where plaintiffs failed to allege any harmful conduct by defendant against the public); *A.J. Sheepskin Leather & Outerwear, Inc. v. USF Ins. Co.*, No. 03- CV-2382, 2004 WL 503727, at *3 (S.D.N.Y. Mar. 12, 2004) (dismissing punitive damages claim because plaintiff did not plead,

14

inter alia, that defendant's conduct was part of a pattern of similar, publicly-directed misconduct); *Avnet, Inc. v. Am. Motorists Ins. Co.*, 684 F. Supp. 814, 816 (S.D.N.Y. 1988) (holding that the insured could not recover punitive damages for liability insurer's refusal to pay allegedly covered costs, where allegations were insufficient to establish harm to public).

### 6. Attorneys' Fees

Finally, Plaintiffs also seek attorneys' fees. (*See* AC 11.) "[U]nder New York law, it is well-settled that 'an insured cannot recover his legal expenses in a controversy with a carrier over coverage, even though the carrier loses the controversy and is held responsible for the risk.'" *Gov't Emps. Ins. Co. v. Clarke*, No. 23-CV-4605, 2024 WL 3069165, at *4 (E.D.N.Y. June 20, 2024) (quoting *Liberty Surplus Ins. Corp. v. Segal Co.*, 420 F.3d 65, 67 (2d Cir. 2005)). "However, New York law recognizes a narrow exception to the general American rule that a prevailing party cannot recover attorneys' fees in the insurance context." *Wentworth Grp. Inc. v. Evanston Ins. Co.*, No. 20-CV-6711, 2022 WL 336456, at *3 (S.D.N.Y. Feb. 4, 2022) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2022 WL 909794 (S.D.N.Y. Mar. 29, 2022). "This exception allows an insured who has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations and who prevails on the merits to recover attorneys' fees." *Id.* (internal quotation marks and citation omitted). "[I]n unusual circumstances, a court may look beyond the labels 'plaintiff' and 'defendant' to determine whether an insured is in an offensive or defensive position vis à vis its insurer in a dispute over the duty to defend (and indemnify)." *Danaher Corp. v. Travelers Indem. Co.*, No. 10-CV-121, 2013 WL 364734, at *4 (S.D.N.Y. Jan. 31, 2013), *report and recommendation adopted*, 2013 WL 1387017 (S.D.N.Y. Apr. 5, 2013).

Here, Plaintiffs present no allegations or argument to demonstrate that they have been cast in defensive position such as to fall within the narrow exception allowing them to claim attorneys' fees. (*See generally* AC; Pls.' Opp.)  Rather, Plaintiffs, the insured, brought an action against Defendant, the insurer, to settle their rights under the relevant insurance policy. Precedent dictates that Plaintiffs may not recover expenses in such an action. *Nat'l R.R. Passenger Corp. v. Arch Specialty Ins. Co.*, 124 F. Supp. 3d 264, 280 (S.D.N.Y. 2015) ("It is well established that, in general, an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." (internal quotation marks and citation omitted)).  Moreover, although there are no "unusual circumstances" requiring the Court to look beyond the labels of plaintiff and defendant, even doing so does not save Plaintiffs' claim.  Plaintiffs do not allege that Defendant has engaged in any conduct "tantamount to an action brought by the insurer seeking to free itself from its policy obligations." *Stein v. N. Assur. Co. of Am.*, No. 09-CV-1029, 2012 WL 1605365, at *12 (E.D.N.Y. May 7, 2012) (emphasis omitted).  Accordingly, Plaintiffs fail to state a claim for attorneys' fees, and therefore, this claim is dismissed.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiffs' claims for breach of fiduciary duty; quality of life; New York Insurance Law § 2601 and 11 CRR-NY 216.0; GBL § 349; punitive damages, and attorneys' fees is granted.  The dismissal is without prejudice because this is the first adjudication on the merits of Plaintiffs' claims.  Should Plaintiffs choose to file an amended complaint, they must do so within thirty days of this Opinion, addressing the deficiencies identified herein.  The amended complaint will replace, not supplement, the complaint currently before the Court.  It therefore must contain all of the claims and factual

16

allegations Plaintiffs wish the Court to consider. If Plaintiffs fails to abide by the thirty-day deadline, the claims that are dismissed could be dismissed with prejudice. The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 8).

SO ORDERED.

Dated: September 23, 2024
        White Plains, New York

                                            KENNETH M. KARAS
                                            United States District Judge